United States District Court
Southern District of Texas

**ENTERED**

June 08, 2020

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRUCE M. RALSTON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-64 |
| | § | |
| THE SHERWIN-WILLIAMS COMPANY, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTION TO REMAND

On March 4, 2020, The Sherwin-Williams Company (Sherwin-Williams), Defendant, removed this action from the County Court at Law No. 1, Nueces County, Texas to this Court. Sherwin-Williams did so on the basis of diversity jurisdiction after Plaintiffs dismissed the only non-diverse Defendant by filing a nonsuit. D.E. 1; 28 U.S.C. § 1446(b)(3). Before the Court is Plaintiffs' motion to remand (D.E. 11), filed on April 3, 2020, arguing that removal is barred by the one-year rule of 28 U.S.C. § 1446(c)(1). Defendants respond that Plaintiffs manipulated diversity jurisdiction in bad faith to delay removal such that the one-year bar should not apply. D.E. 22, 23, 24. For the reasons set out below, the Court GRANTS the motion and remands this action to state court.

## FACTS

On March 20, 2018, Plaintiff Bruce M. Ralston (Ralston) was applying lacquer to paint cabinets in a residential kitchen when the area ignited and he sustained serious burn injuries. On October 19, 2018, Ralston sued the homeowner, Beth Rivera, alleging

negligence in the form of premises liability.  D.E. 1-6.[1]  Both Ralston and Rivera are citizens of Texas.  No other Defendants were joined at that time and it is undisputed that Ralston did not serve Rivera with the original petition.  D.E. 1-5.

Ralston's experts attended an artifact inspection on November 8, 2018. Thereafter, on December 13, 2018, Ralston filed his first amended petition in which he maintained the same allegations against Rivera and added new Defendants.  D.E. 1-7. Rivera was served with this petition on February 13, 2019.  D.E. 1-5.

The amended petition includes claims against Robert Bosch, LLC and BSH Home Appliances Corporation (Bosch Defendants) for an allegedly known fire hazard in the Bosch dishwasher which was installed in the Rivera kitchen, but had been recalled.  D.E. 1-7.  Ralston also added claims against Sherwin-Williams for an alleged fire hazard posed by the lacquer.  Both sets of product liability claims were set out in terms of strict liability and gross negligence.  The Bosch Defendants were served with this petition on December 28, 2018 and January 2, 2019, respectively.  Sherwin-Williams was served on December 21, 2018.  D.E. 1-5.

It is undisputed that the Bosch Defendants and Sherwin-Williams have citizenship that is diverse from Ralston.  Included in the first amended petition is a notice that, while the amount in controversy exceeds $75,000, complete diversity does not exist (given that Rivera is non-diverse).  Consequently, it warns that the case is not removable and any

---

[1]  Ralston was working with Aubrey (AJ) Sanders, who was also injured and has filed a separate lawsuit in state court.  That case is not removable because Sanders also sued Ralston as a defendant, defeating diversity of citizenship.  While Plaintiffs suggest that there are judicial efficiencies associated with trying both cases in state court because they could be consolidated, the Court does not speculate on potential future proceedings and considers the Sanders lawsuit irrelevant to the issues presented for decision here.

attempt to remove will be met with a motion to remand, accompanied by requests for sanctions and attorney's fees.  D.E. 1-7.

The only written discovery that Plaintiffs propounded to Rivera was a request for disclosures.  Soon after she was served, Rivera propounded interrogatories to Ralston requesting a list of Rivera's acts and omissions that he contended would support her liability.  D.E. 22-2.  In March 2019, Ralston objected to the interrogatory and responded vaguely regarding the explosion and the fact that he was injured.

Ralston's experts attended a second artifact inspection on April 10, 2019.  Ralston then filed his second amended petition on May 30, 2019.  See. D.E. 1-5.  He added his spouse and children as Plaintiffs seeking damages for their injuries, including loss of consortium, mental anguish, pecuniary damages, and loss of inheritance.  D.E. 1-8.

There is no question that on October 19, 2019, the one-year removal bar took effect in this case.  28 U.S.C. § 1446(c)(1).  The parties deposed Ralston on October 22, 2019.  D.E. 11-5.  At that time, he testified that he, personally, had no reason to consider Rivera responsible for the accident.  D.E. 1-9 (145:2-7).  However, he also testified that he deferred to his attorneys to determine the parties liable for the incident.  D.E. 11-5, p. 64 (254:1-6).

At the request of the Bosch Defendants, the parties deposed Rivera on October 23, 2019.  D.E. 11-4.  At that time, the parties failed to elicit any factual support for the Plaintiffs' claims against her.  She testified that she was unaware of any potential fire hazards or appliance recalls prior to the incident.  D.E. 23-7.  She also stated that she exercised no control over how Ralston completed the paint job for which he was hired.

*E.g.*, D.E. 11-4, pp. 18-19 (72:12-74:12).  On November 12, 2019, Rivera filed a motion for summary judgment, to which Plaintiffs did not respond.  D.E. 1-5.  The motion is not included in the record and Defendants have not described its basis, other than to state that it was both a traditional and no-evidence motion.

Plaintiffs' third amended petition, filed January 7, 2020, altered the previous claims by describing the product claims as sounding in negligence and strict liability, omitting the gross negligence claims against the Bosch Defendants and Sherwin-Williams.  It further added product liability claims sounding in negligence and failure to warn against Wagner Spray Tech Corporation (Wagner) for an alleged fire hazard in its paint sprayer pump.  D.E. 1-11.  Wagner is also a diverse Defendant and was served on January 17, 2020.  D.E. 1-5.  With respect to Rivera, the third amended petition made essentially the same claims, but stated them twice with slightly altered language:  once labeled as negligence and once labeled as premises liability.  D.E. 1-11.

In response, Rivera filed an amended motion for summary judgment on January 30, 2020, which is not in this record.  D.E. 1-5.  Again, Plaintiffs did not respond to the motion.  *Id*.  The Texas two-year statute of limitations for personal injury actions was to expire March 20, 2020.  Tex. Civ. Prac. & Rem. Code § 16.003; *Roman v. A. H. Robins Co., Inc*., 518 F.2d 970, 971 (5th Cir. 1975) (two-year personal injury statute applies to product liability actions).  According to the Docket Control Order, the discovery period was not set to end until April 20, 2020.  D.E. 1-20.

On February 24, 2020, the day prior to the date set for hearing Rivera's summary judgment motion, Plaintiffs nonsuited their claims against Rivera.  D.E. 1-5; 1-12.  The

nonsuit was without prejudice and was not supported by consideration from Rivera.  On March 4, 2020, armed with complete diversity of citizenship and a conceded amount in controversy exceeding $75,000, Defendants removed the case to this Court.  D.E. 1.

## STANDARD OF REVIEW

On a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."  *Id*. The strict construction rule arises because of "significant federalism concerns."  *See generally, Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

Defendants rely on their right to removal being triggered by Plaintiffs' February 24, 2020 nonsuit of Rivera, which created diversity of citizenship and started a new 30-day removal deadline.  28 U.S.C. § 1446(b)(3).  However, under the one-year bar, Defendants could not take advantage of the § 1446(b)(3) removal at that time unless Plaintiffs previously "acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c)(1).  This bad faith standard was added by the Federal Courts Jurisdiction and Venue Clarification Act of 2011.  Pub. L. 112–63, title I, §§ 103(b), 104, Dec. 7, 2011, 125 Stat. 760, 762.

The Fifth Circuit has not fully articulated the standard to apply in determining what constitutes such bad faith.  In that void, many district courts continued to apply the Fifth Circuit's standard for equitable tolling that applied prior to the amendments.  That standard was derived from *Tedford v. Warner-Lambert Co*., 327 F.3d 423, 428 (5th Cir.

2003).  *See generally*, *Jackson v. Alsco, Inc.*, CV H-19-1101, 2019 WL 2250942, at *2 (S.D. Tex. May 24, 2019).   However, the Fifth Circuit has recently disavowed that approach as superseded by statute.  *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019) (rejecting the appellate complaint that the district court did not properly apply *Tedford*).

Noting that there is no new clear standard, sister courts have held that, to meet the bad faith requirement, defendants must show that plaintiffs engaged in manipulation of the removal rules.  *Rantz v. Shield Coat, Inc.*, CV 17-3338, 2017 WL 3188415, at *5 (E.D. La. July 26, 2017) (collecting cases); *see also, Boney v. Lowe's Home Ctrs. LLC*, 3:19-CV-1211-S, 2019 WL 5579206, at *2 (N.D. Tex. Oct. 29, 2019).  The court acts as factfinder and any finding is subject to the clearly erroneous standard of review.  *Hoyt*, 927 F.3d at 292.  In *Hoyt*, the plaintiffs' actions were read to demonstrate that the non-diverse defendant was kept in the case "for one purpose and one purpose only—to prevent removal during § 1446(c)'s one-year removal period."  *Id*. at 292-93.

## DISCUSSION

A plaintiff's preference for a state forum, displayed in the parties sued and/or types of claims made, does not alone constitute bad faith.  Evaluating a plaintiff's "obvious objective [] to change the forum by getting back into state court," the Fifth Circuit wrote, "we do not see this as forum manipulation, but rather as a legitimate attempt to try her state law claims in the forum of her choice."  *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 340 (5th Cir. 1999); *see also, Hernandez v. Cent. Power & Light*, 880 F. Supp. 494, 496 (S.D. Tex. 1994) (remanding after plaintiff dropped claim

construed to raise a federal question, deeming it appropriate as only "minimal" forum manipulation); *Ford v. Pa. Higher Educ. Assistance Agency*, 3:18-CV-02782-K (BT), 2019 WL 3413472, at *2 (N.D. Tex. July 26, 2019) (Magistrate Judge) (citing *Hernandez* and allowing amendment of pleading to drop federal claim in preparation for remand). For this reason, this Court finds nothing untoward in the paragraph of the first amended petition that warns against an attempt at removal.

Defendants suggest that Plaintiffs engaged in bad faith forum manipulation because they never intended to prosecute their claims against Rivera, joining her only to defeat diversity jurisdiction.  When it is clear that a plaintiff has no cognizable claim against a non-diverse defendant, a diverse defendant's remedy is to remove within thirty (30) days of being served, bearing the burden to prove improper joinder.  *See generally*, 28 U.S.C. §§ 1441(a), 1446(b)(2).  Defendants did not do this.  Therefore, the case became removable only upon a showing that Plaintiffs definitely and unequivocally abandoned their claims against Rivera.  *Ramirez v. Michelin N. Am., Inc.*, 2007 WL 2126635, at *3-4 (S.D. Tex. 2007) (collecting cases).  Defendants acknowledge that this occurred upon Plaintiffs' filing of their nonsuit against Rivera.  If removability were triggered earlier, their removal would not be timely under the 30-day limit.

Thus, Defendants' complaint of bad faith depends on showing that, while Plaintiffs had a potential, cognizable claim against Rivera, they made a decision not to pursue it within the one-year period after commencing the case, but kept that intention secret until they filed the nonsuit after the one-year period.  The behaviors on which Defendants predicate this proposition are insufficient because they involve non-

prejudicial actions and speculation regarding Plaintiffs' intent.  Moreover, the timeline works against them.

### A.  Filing and Service

Defendants argue that Plaintiffs "burned months" off the one-year period by failing to serve the original petition on Rivera and serving the first amended petition nearly two months after it was filed (nearly four months after the original petition was filed).  D.E. 23, p. 11.  As noted, Rivera was served on February 13, 2019.  While the Court does not have discretion to do so, if we treated this date of service as the beginning of the one-year period, the February 24, 2020 nonsuit was still filed after that period.  Thus, Defendants have failed to show that any delay in service was prejudicial to their statutory right of removal.

Indeed, by starting the period on the date the case is commenced, the one-year rule does not purport to protect diverse defendants who are added long after the case is commenced.  28 U.S.C. § 1446(c)(1).  Instead, such defendants are protected by the amendments that ensure that they may remove within thirty (30) days of the date they are served, regardless of the time that has elapsed or what has previously transpired in the case, so long as they have grounds to do so.  28.U.S.C. § 1446(b)(2)(B) & (C).

Defendant Wagner complains of having been denied opportunity to remove the case.  D.E. 22, pp. 2-3 ("Wagner was not served with Plaintiffs' petition until three months after the original removal deadline passed, thereby precluding Wagner from weighing in on removal prior to the one-year deadline.").  The one-year deadline applies only to removal under § 1446(b)(3).  28 U.S.C. § 1446(c)(1).  When Wagner was served

on January 17, 2020, it had until February 16, 2020, to remove the case under §
1446(b)(2) on allegations of improper joinder, which the parties claim was apparent as
early as October 22, 2019, if not earlier, as will be discussed below.

**B.  Conduct of Discovery**

Defendants argue that Plaintiffs' discovery efforts to support their claims against
Rivera were lackluster, at best.  They made requests for disclosure, but propounded no
other written discovery to her.  They offered objections rather than substantive responses
to her interrogatory to Ralston seeking an account of the conduct on which they based
their claims against her.  Defendants point out that Plaintiffs let Defendants take the lead
in noticing Rivera's deposition and questioning her.  By the same token, Plaintiffs did
participate in her deposition by asking questions, even though they did not dominate the
exercise.

While Defendants characterize this as evidence that Plaintiffs had no intention of
pursuing their claims against Rivera, the Court must evaluate the evidence in the context
of the case.  Ralston filed this action soon after the incident, with plenty of time left on
the two-year statute of limitations.  Plaintiffs' theory of recovery against Rivera was
based on there being an ignition source in her home, particularly in her kitchen, about
which she might have actually or constructively known.  Plaintiffs were still in search of
likely ignition sources, having engaged in two artifact inspections prior to the deposition
and adding Wagner as a Defendant with respect to its paint sprayer pump well after the
Rivera deposition.  And Plaintiffs still had months left to complete discovery.

Under these circumstances, it is difficult to conclude that Plaintiffs' had already made a decision to dismiss their claims against Rivera.  It is equally possible that Plaintiffs were reserving judgment and seeking to preserve any rights against her while they further developed the facts of the case.  Simply treating Rivera as a secondary target of the litigation does not necessarily mean that Plaintiffs were manipulating the removal procedures.

### C.  Results of Discovery

Defendants also contend that once Ralston and Rivera were deposed, it was clear that Plaintiffs had no case against Rivera.  They bolster this argument with the observation that when amending their petition, Plaintiffs did not shore up or refine their allegations against her.  There are at least three flaws in this argument.

First is the timeline.  The depositions and resulting pleading amendments took place after the one-year deadline.  To transform the information gleaned in the depositions into evidence of bad faith, Defendants speculate that either (a) counsel knew what Ralston was going to testify to prior to the deposition and before one-year elapsed, or (b) Plaintiffs' experts already knew and communicated to Plaintiffs that there were no facts to support Rivera's liability.  The Court will not find that Plaintiffs acted in bad faith based entirely on speculation.

Second, this argument calls upon the Court to view the deposition testimony in isolation, concluding that no other evidence would be brought to bear against Rivera.  For instance, they ask the Court to disregard whether someone other than Ralston might have had evidence against Rivera or whether Rivera's testimony might be impeached.  And

there remained the question whether all potential ignition sources had been identified at that time.  While Plaintiffs did not submit a response to Rivera's motions for summary judgment, there is no evidence (as opposed to speculation) to show that Plaintiffs had already given up on the claims against her prior to the expiration of the one-year deadline, which notably preceded the filing of the summary judgment motions.

Third, Defendants suggest that a client, without legal or other expert credentials and with limited knowledge of the evidence being developed, can definitively state whether a party bears legal responsibility in connection with a personal injury.  The Court is not inclined to accept such a notion in a case as complicated as this one.  And, as Plaintiffs pointed out, Ralston hedged his testimony by admitting that it was his attorney's job to figure that out.

The Court is not required to accept Defendants' subjective interpretation of the facts when those facts could give rise to equal and opposite inferences.  *N.L.R.B. v. Brookwood Furniture, Div. of U.S. Indus.*, 701 F.2d 452, 467 (5th Cir. 1983) (conclusion based on timing of events could substantiate either of two equal inferences).

### D.  Sanders' Attempted Intervention

Last, Defendants argue that it is significant that before, and immediately after, the filing of the notice of removal, Sanders attempted to intervene in the case.  They assume, without citing any evidence, that the purpose of this was to provide another avenue to defeat diversity by making Ralston a defendant in his own case.[2]  Defendants have not supplied the petitions in intervention for the Court's review and have offered nothing but

---

[2]  *See* footnote 1.

11 / 12

speculation that Ralston and Sanders, who were opponents in Sanders' case, were conspiring to defeat the removal statutes in Ralston's case.

## CONCLUSION

The courts are to construe removal statutes in favor of remand.  When § 1446(c)(1) requires a showing of plaintiffs' bad faith forum manipulation before removal is permitted under § 1446(b)(3) after the one-year deadline, the court is to make that bad faith finding of fact on the evidence.  Defendants bear the burden of proof to show that Rivera was kept in the case for one purpose and one purpose only—to prevent removal within the first year that the case was pending.

At best, Defendants have shown that Plaintiffs did not treat their claims against Rivera as a priority.  However, the Court will not find bad faith based on inferences.  The Court GRANTS the motion and REMANDS this action to County Court at Law No. 1, Nueces County, Texas, the court from which it was removed.  The Court DENIES Plaintiffs' request for attorney's fees under 28 U.S.C. § 1447(c).

ORDERED this 8th day of June, 2020.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE